Christian V. McOmber, Esq. – NJ ID #012292010
  cvm@njlegal.com
Peter D. Valenzano, Esq. – NJ ID #037892010
  pdv@njlegal.com
Andres F. Puerta, Esq. – NJ ID #245222017
  afp@njlegal.com
McOMBER McOMBER & LUBER, P.C.
54 Shrewsbury Avenue
Red Bank, NJ 07701
(732) 842-6500 Phone
*Attorneys for Plaintiff, Sanaiya Carlton*

| | |
|---|---|
| SANAIYA CARLTON,<br><br>                        Plaintiff,<br>v.<br><br>NATIONAL DEBT RELIEF LLC; ANWAR GIBRIEL; TYSHAWN BOYCE; ANTHONY BILARDI; STEPHANIE TORRES; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>                        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>ESSEX COUNTY<br><br>DOCKET NO:<br><br>Civil Action<br><br>**COMPLAINT & DEMAND FOR TRIAL BY JURY; FIRST DEMAND FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES DIRECTED TO ALL DEFENDANTS** |

Plaintiff Sanaiya Carlton ("Plaintiff"), by way of Complaint against Defendants National Debt Relief LLC ("Defendant NDR"), Defendants ABC Corporations 1-5 (fictitious names describing presently unidentified business entities) (along with "Defendant NDR," collectively referred to as the "Corporate Defendants"), Defendant Anwar Gibriel ("Defendant Gibriel"), Defendant Tyshawn Boyce ("Defendant Boyce"), Defendant Anthony Bilardi ("Defendant Bilardi"), Defendant Stephanie Torres ("Defendant Torres") and Defendants John Does 1-5 (fictitious names describing presently unidentified individuals) (along with "Defendant Gibriel," "Defendant Boyce," "Defendant Bilardi," and "Defendant Torres," collectively referred to as the

"Individual Defendants") ("Corporate Defendants" and "Individual Defendants" collectively referred to as the "Defendants" or the "NDR Defendants"), alleges as follows:

### PRELIMINARY STATEMENT

*This action arises from Defendants' unlawful discrimination and retaliation against Plaintiff, whom Defendants targeted, disciplined, and terminated shortly after Plaintiff announced her pregnancy, in direct violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. (hereinafter referred to as the "NJLAD").* After more than two years of competent and successful employment, including receiving a performance-based raise just months earlier, Plaintiff's employment trajectory abruptly changed once Defendants learned she was pregnant and would require pregnancy-related leave.

On or about September 5, 2025, Plaintiff notified her manager and Defendant NDR's Human Resources department that she was pregnant and provided an estimated due date of March 22, 2026. Despite the significance of this disclosure, Plaintiff received no response or acknowledgment from Defendants at that time. Just three days later, on or about September 8, 2025, Defendants placed Plaintiff on a Performance Improvement Plan ("PIP"), purportedly based on alleged performance issues from the prior two months. The PIP was a pretextual and discriminatory action that deviated from Defendant NDR's own policies and relied on inaccurate and misleading performance metrics. Defendants improperly included days Plaintiff did not work when calculating her performance and counted absences against her, thereby distorting the data used to justify the PIP. Plaintiff immediately raised these inaccuracies and explained that the metrics were flawed. During the same discussion, Plaintiff also advised that she had still not received any response to her pregnancy notification.

2

Defendants' mishandling of Plaintiff's pregnancy continued. On or about September 10, 2025, five days after Plaintiff announced her pregnancy, Defendant NDR's Benefits & Wellness Specialist incorrectly informed Plaintiff that her due date was allegedly in October and advised her to complete Family and Medical Leave Act paperwork. This assertion was plainly wrong, as Plaintiff's estimated due date was in March 2026. Defendants' erroneous assumption reflected a lack of care, diligence, and concern regarding Plaintiff's medical circumstances and further underscored their discriminatory treatment.

Although the PIP was imposed for the period of September 1, 2025 through September 30, 2025, Defendants terminated Plaintiff's employment on or about September 29, 2025, one day before the PIP was scheduled to expire. During the termination call, Defendants asserted for the first time that Plaintiff had allegedly used profanity during a client call weeks earlier and claimed that an email had been sent to Plaintiff regarding the incident. Plaintiff had never received such an email, was unaware of its contents, and was denied access to any written documentation or the alleged audio recording supporting Defendants' claims.

The suspicious timing of the PIP, Defendants' inaccurate and shifting explanations for their actions, their failure to properly address Plaintiff's pregnancy notification, and Plaintiff's termination shortly after announcing her pregnancy establish a clear causal connection between Plaintiff's protected status and the adverse employment actions taken against her. Defendants' conduct was discriminatory, retaliatory, and in direct violation of the New Jersey Law Against Discrimination. Fortunately, the NJLAD provides redress for employees subjected to such discrimination. Accordingly, Plaintiff brings this lawsuit to avail herself of her right to work in an environment free from pregnancy-based discrimination and retaliation.

## PARTIES

1. Plaintiff is a domiciliary of the State of New Jersey presently residing in Irvington, New Jersey. At all times relevant hereto, Plaintiff was employed by Defendant NDR as an Account Executive, Debt Specialist – Sales.

2. Defendant NDR is a corporation organized and existing under the laws of the State of New York and maintains a principal place of business at 180 Maiden Lane, New York, New York 10038. At all times relevant hereto, Defendant NDR is an "employer" as defined under the NJLAD.

3. Defendant Gibriel, at all times relevant hereto, was employed by Defendant NDR as a Regional Sales Manager. Upon information and belief, Defendant Gibriel is a domiciliary of the State of New York. This claim is brought against Defendant Gibriel in his individual capacity and as an agent of Defendant NDR who aided and abetted in the discrimination or retaliation alleged herein.

4. Defendant Boyce, at all times relevant hereto, was employed by Defendant NDR as a Team Supervisor. Upon information and belief, Defendant Boyce is a domiciliary of the State of Texas. This claim is brought against Defendant Boyce in his individual capacity and as an agent of Defendant NDR who aided and abetted in the discrimination or retaliation alleged herein.

5. Defendant Bilardi, at all times relevant hereto, was employed by Defendant NDR as a Conference Manager. Upon information and belief, Defendant Bilardi is a domiciliary of the State of New York. This claim is brought against Defendant Bilardi in his individual capacity and as an agent of Defendant NDR who aided and abetted in the discrimination or retaliation alleged herein.

4

6. Defendant Torres, at all times relevant hereto, was employed by Defendant NDR as a Human Resources representative. Upon information and belief, Defendant Torres is a domiciliary of the State of New York. This claim is brought against Defendant Torres in her individual capacity and as an agent of Defendant NDR who aided and abetted in the discrimination or retaliation alleged herein.

7. Defendants ABC Corporations 1-5 are currently unidentified business entities that have acted in concert with Corporate Defendants, and/or currently unidentified business entities responsible for the creation and/or implementation of anti-discrimination and/or anti-retaliation policies of the Corporate Defendants, and/or currently unidentified business entities that may have liability for the damages suffered by Plaintiff under any theory advanced herein.

8. Defendants John Does 1-5 are currently unidentified individuals who have acted in concert with Defendants, and/or currently unidentified individuals responsible for the creation and/or implementation of anti-discrimination and/or anti-retaliation policies of the Corporate Defendants, and/or are currently unidentified individuals who may have liability for the damages suffered by Plaintiff under any theory advanced herein.

## FACTS COMMON TO ALL CLAIMS

9. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey specific policies prohibiting discrimination based on gender and pregnancy.

10. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey specific policies prohibiting workplace retaliation.

11. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey a zero-tolerance policy when it comes to workplace harassment and retaliation.

12. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures requiring an employee who believes he or she was the victim of any discrimination, harassment, and/or workplace retaliation to report the discrimination, harassment, and/or retaliation to supervisory, management, and/or human resources personnel working for Corporate Defendants.

13. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures whereby they would engage in a timely and effective investigation of complaints of discrimination, harassment, and retaliation brought to their attention by Corporate Defendants' employees.

14. Corporate Defendants claim, at all times relevant hereto, that they had in effect at their facilities and locations within the State of New Jersey policies and procedures committing them to undertake prompt and effective remedial measures to put a stop to any discrimination, harassment, or retaliation they found to exist.

15. Plaintiff began her employment with Defendant NDR on or about March 1, 2023, as an Account Executive, Debt Specialist – Sales, and consistently performed her duties competently and dutifully, and even received a performance-based raise in January 2025. She was committed to her role and anticipated a long-term future with the company.

16. However, after becoming pregnant with her first child and requesting pregnancy-related leave, Plaintiff was placed on a Performance Improvement Plan ("PIP"), which deviated from company policy, and ultimately terminated.

6

**A.     Plaintiff Announces Her Pregnancy And Is Placed On A PIP Just Three Days Later.**

17.     On or about September 5, 2025, Plaintiff emailed her manager, Defendant Boyce, and Defendant NDR's Human Resources department to notify them that she was pregnant. Plaintiff provided an estimated due date of the birth of her child of March 22, 2026.

18.     Plaintiff did not receive any response to her pregnancy announcement at that time.

19.     On or about September 8, 2025, three days after notifying Defendant NDR of her pregnancy, Defendant Boyce and Defendant Gibriel placed Plaintiff on a Performance Improvement Plan ("PIP") purportedly based on her performance during the prior two months.

20.     The performance metrics relied upon to justify the PIP included days on which Plaintiff had not worked, and her absences were counted against her in calculating her performance.

21.     Plaintiff explained that the performance metrics were inaccurate because they included days she had not worked.

22.     During the September 8, 2025 discussion regarding the PIP, Plaintiff further advised Defendant Boyce that she was still awaiting a response from Defendant NDR concerning her pregnancy notification.

23.     The PIP was imposed for the period September 1, 2025 through September 30, 2025.

24.     On or about September 10, 2025, Plaintiff received her first response from Lorena Martin ("Ms. Martin"), Benefits & Wellness Specialist for Defendant NDR, regarding her pregnancy.

25. At that time, Ms. Martin informed Plaintiff that, because her due date was allegedly in October, she would need to complete paperwork to take leave under the Family and Medical Leave Act ("FMLA").

26. Ms. Martin's statement regarding an October due date was incorrect. Plaintiff's estimated due date for the birth of her child was March 22, 2026, not October 2025.

27. Defendant NDR's incorrect assumption regarding Plaintiff's due date reflected a lack of care and attention toward Plaintiff's pregnancy and medical circumstances.

**B.    Plaintiff Complains About the Discrimination and Retaliation She Faced, and Defendants Fail to Take Proper Remedial Action, Resulting in Further Discrimination and Plaintiff's Retaliatory Termination.**

28. On or about September 29, 2025, one day before the PIP was scheduled to expire, Defendant NDR terminated Plaintiff's employment.

29. That day, during a call with Defendant Torres and Defendant Bilardi, Defendants Torres and Bilardi asserted that the termination was based on allegations that Plaintiff had cursed or otherwise used profanity during a client call on August 10, 2025, and claimed Defendant NDR had sent an e-mail to Plaintiff on that day regarding same.

30. Plaintiff did not have the referenced email in her inbox and was unaware of its contents.

31. Plaintiff requested written documentation supporting the stated reasons for her termination.

32. Defendants Bilardi and Torres denied Plaintiff's request for written documentation.

33. Plaintiff also requested that Defendants Bilardi and Torres play the audio recording of the client call demonstrating that Plaintiff had used profanity during the call.

8

34. Defendants Bilardi and Torres again denied Plaintiff's request to listen to the audio recording.

35. During this call, Plaintiff also objected to the NDR Defendants' conduct subsequent to her pregnancy announcement as discriminatory based on her pregnancy.

36. Defendant Torres and Defendant Bilardi shrugged off and failed to directly address Plaintiff's discrimination complaint.

37. Upon information and belief, Defendant NDR did not investigate Plaintiff's claims of discrimination.

38. The timing of Plaintiff's placement on a PIP, the mischaracterization of her performance metrics, Defendant NDR's mishandling of her pregnancy notification, and her termination shortly after announcing her pregnancy demonstrate a causal connection between Plaintiff's pregnancy, Plaintiff's request for pregnancy-related leave, and the adverse employment actions taken against her.

39. As a result of Defendants' actions, Plaintiff suffered loss of employment, lost wages and benefits, emotional distress, and other damages.

40. Because of the joint and several acts and omissions of the Corporate Defendants, Individual Defendants, John Does 1-5, and ABC Corporations 1-5, Plaintiff has been and continues to suffer economic loss and pecuniary damage in the form of lost income and benefits past, present, and future.

41. Because of the joint and several acts and omissions of the Corporate Defendants, Individual Defendants, John Does 1-5, and ABC Corporations 1-5, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, and anxiety, causing her mental and emotional anguish and dysfunction and physical manifestations of same, including, but not

limited to, nightmares, inability to sleep, weight loss, headaches, panic attacks, crying, negative thoughts, nervousness, anxiousness, anxiety attacks, upset stomach, and stomach pains, all or some of which may be permanent.

## COUNT ONE

## NJLAD – DISPARATE TREATMENT & HOSTILE WORK ENVIRONMENT DISCRIMINATION DUE TO PREGNANCY AND/OR GENDER

42. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

43. The pattern and practice of discrimination and harassment directed at Plaintiff is outlined above.

44. Plaintiff was subjected to repeated, pervasive, severe, and continuing instances of disparate treatment based on her gender and/or pregnancy.

45. The harassing and discriminatory conduct would not have occurred but for Plaintiff's gender and/or pregnancy.

46. The harassing and discriminatory conduct was severe or pervasive enough to make a reasonable person believe that the conditions of employment were altered, and the working environment was hostile and discriminatory.

47. The treatment received from Corporate Defendants, Individual Defendants, Defendants ABC Corporations 1-5, and Defendants John Does 1-5, jointly or severally, violates the NJLAD, which prohibits unlawful employment discrimination against any person because of race, religion, age, *gender*, handicap, marital status, national origin, sexual orientation, etc.

48. Defendants did not have an effective anti-discrimination policy in place, Defendants have not maintained an anti-discrimination policy that is current and effective, and Defendants' anti-discrimination policy existed in name only.

49. Defendants did not maintain useful formal and informal complaint structures for victims of discrimination, harassment, or retaliation.

50. Defendants did not properly train their supervisors and/or employees on the subject of discrimination, harassment, and retaliation.

51. Defendants failed to institute appropriate monitoring mechanisms to check the effectiveness of the policies and complaint structures.

52. Defendants did not have a commitment from the highest levels of management that discrimination and harassment will not be tolerated.

53. As a result of the above harassing and discriminatory conduct, Plaintiff experiences ongoing and debilitating emotional distress and experiences significant economic damages.

54. As the employer and/or supervisor of the Plaintiff, Corporate Defendants are vicariously, strictly, and/or directly liable to the Plaintiff pursuant to the NJLAD in that the affirmative acts of discrimination committed by the Individual Defendants occurred within the scope of their employment; allowing the Individual Defendants to control the day-to-day working environment; and/or Corporate Defendants were deliberately indifferent, reckless, negligent, and/or tacitly approved the hostile work environment; and/or Corporate Defendants failed to create and/or have in place well-publicized and enforced anti-discrimination policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms for same, despite the foreseeability of discrimination in the workplace; and/or by having actual knowledge of the discrimination of Plaintiff and failing to promptly and effectively act to stop it.

55. Corporate Defendants aided, abetted, incited, compelled, and/or coerced, and/or attempted to aid, abet, incite, compel, and/or coerce the Individual Defendants to commit acts and omissions that were in direct violation of the NJLAD by committing affirmatively discriminatory

and retaliatory acts towards Plaintiff in clear violation of its supervisory duties to halt or prevent harassment, subjecting Corporate Defendants to liability pursuant to N.J.S.A. 10:5-12(e).

56.     The Individual Defendants and the managers and/or supervisors of Plaintiff aided, abetted, incited, compelled, and/or coerced, and/or attempted to aid, abet, incite, compel, and/or coerce Defendants to commit acts and omissions that were in violation of the NJLAD by committing affirmatively harassing, discriminatory, and retaliatory acts toward Plaintiff in violation of their supervisory duty to halt or prevent harassment, retaliation, and discrimination, rendering Defendants individually and collectively liable to Plaintiff pursuant to N.J.S.A. 10:5-12(e).

57.     As a proximate cause of the joint and several unlawful acts and omissions of the Defendants described at length herein, Plaintiff has suffered and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present, and future.

58.     As a proximate result of the discriminatory and retaliatory actions undertaken by Corporate Defendants, Individual Defendants, Defendants John Does 1-5, and Defendants ABC Corporations 1-5, jointly and/or severally, Plaintiff has suffered and continues to suffer non-economic damages in the form of humiliation, stress, anger, sadness, and anxiety, causing her mental and emotional anguish and dysfunction and physical manifestations of same, including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, and loss of sleep, all or some of which may be permanent.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the NJLAD, punitive damages, emotional distress damages, pre- and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just. More specifically,

Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

- A. Reinstatement of employment and all benefits;
- B. Back pay and benefits;
- C. Front pay and benefits;
- D. Compensatory damages;
- E. Consequential damages;
- F. Reinstatement;
- G. Punitive damages;
- H. Prejudgment interest and enhancements to off-set negative tax consequences;
- I. Any and all attorneys' fees, expenses and/or costs, including but not limited to court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);
- J. Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable;
- K. Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;
- L. Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace;
- M. Ordering Defendants to undergo anti-discrimination training;
- N. Ordering Defendants to undergo anti-retaliation training;
- O. Ordering Defendants to undergo anti-harassment training;
- P. Ordering Defendants to undergo workplace civility training;
- Q. Ordering Defendants to undergo bystander intervention training;
- R. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;
- S. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;
- T. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training;
- U. Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training;
- V. Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training;
- W. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;
- X. Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment;
- Y. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

      Z.      Such other relief as may be available and which the Court deems just and equitable.

## COUNT TWO

## NJLAD – RETALIATION/IMPROPER REPRISAL

59.      Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

60.      NJLAD's anti-reprisal provision specifically prohibits "any person from taking reprisals against any person because that person has opposed any practices or acts forbidden under this act." N.J.S.A. 10:5-12(d).

61.      Plaintiff engaged in protected activity under the NJLAD when she requested pregnancy-related maternity leave, as set forth above.

62.      Defendants had knowledge about Plaintiff's request for leave, complaints and/or protests.

63.      As a direct result of Plaintiff's request for pregnancy-related leave, complaints regarding Defendants' conduct, Defendants took retaliatory action against Plaintiff, which is outlined above.

64.      The retaliation directed at Plaintiff included, but is not limited to, Plaintiff's continued harassment, being placed on a pretextual PIP because she took maternity leave and/or because of her complaints about Corporate Defendants' discrimination against her, and termination of employment.

65.      Plaintiff was affirmatively and/or constructively terminated by Defendants in retaliation for making complaints about Defendants' conduct and due to Defendants' failure to take corrective and remedial action. As a direct result, Defendants took retaliatory action against Plaintiff, which is outlined above.

14

66. Defendants are vicariously, strictly, and/or directly liable to Plaintiff for unlawful retaliatory conduct in violation of the NJLAD pursuant to N.J.S.A. 10:5-12(d).

67. Individual Defendants' unlawful conduct imposes liability on themselves and Corporate Defendant(s) under the NJLAD's anti-retaliation provision. See N.J.S.A. 10:5-12(d) (prohibiting "any person from taking reprisals against any person because that person has opposed any practices or acts forbidden under this act."); Craig v. Suburban Cablevision, Inc., 274 N.J. Super. 303, 644 A.2d 112, 115 (App. Div. 1994); Tyson v. Cigna Corp., 918 F. Supp. 836, 839 (D.N.J. 1996); Kamdem-Ouaffo v. Task Mgmt., No. 17-cv-7506, 2018 U.S. Dist. LEXIS 113899, at *48 (D.N.J. July 9, 2018); McDermott v. CareAllies, Inc., 503 F. Supp. 3d 225, 238-39 (D.N.J. 2020); Smart v. Cnty. of Gloucester, No. 20-12408, 2022 U.S. Dist. LEXIS 198, at *11-12 (D.N.J. Dec. 30, 2021).

68. As a proximate result of the aforementioned acts and omissions set forth herein, Plaintiff has sustained emotional and pecuniary damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies available under the law, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs of suit. More specifically, Plaintiff demands judgment against Defendants for harm suffered in violation of the NJLAD as follows:

    A.    Reinstatement of employment and all benefits;
    B.    Back pay and benefits;
    C.    Front pay and benefits;
    D.    Compensatory damages;
    E.    Consequential damages;
    F.    Reinstatement;
    G.    Punitive damages;
    H.    Prejudgment interest and enhancements to off-set negative tax consequences;

| | |
|---|---|
| I. | Any and all attorneys' fees, expenses and/or costs, including but not limited to court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law); |
| J. | Such other relief as may be available pursuant to the NJLAD and which the Court deems just and equitable; |
| K. | Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace; |
| L. | Ordering Defendants to take appropriate corrective action to stop and prevent harassment at the workplace; |
| M. | Ordering Defendants to undergo anti-discrimination training; |
| N. | Ordering Defendants to undergo anti-retaliation training; |
| O. | Ordering Defendants to undergo anti-harassment training; |
| P. | Ordering Defendants to undergo workplace civility training; |
| Q. | Ordering Defendants to undergo bystander intervention training; |
| R. | Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training; |
| S. | Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training; |
| T. | Ordering Defendants to engage a research organization to assess the effectiveness of their anti-harassment training; |
| U. | Ordering Defendants to engage a research organization to assess the effectiveness of their workplace civility training; |
| V. | Ordering Defendants to engage a research organization to assess the effectiveness of their bystander intervention training; |
| W. | Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination; |
| X. | Ordering Defendants to identify an appropriate professional to investigate any future complaints of harassment; |
| Y. | Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and |
| Z. | Such other relief as may be available and which the Court deems just and equitable. |

## DEMAND FOR DISCOVERY OF INSURANCE COVERAGE

Pursuant to R. 4:10-2(b), demand is made that Defendants disclose to Plaintiff's attorney whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of the judgment which may be entered in this action or indemnify or reimburse for payments made to satisfy the judgment and provide Plaintiff's attorney with true copies of those insurance agreements or policies, including

but not limited to any and all declaration sheets. This demand shall include and cover not only primary insurance coverage, but also any excess, catastrophe, and umbrella policies.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues.

McOMBER McOMBER & LUBER, P.C.<br>
*Attorneys for Plaintiff, Sanaiya Carlton*

By: /s/ *Peter D. Valenzano*<br>
PETER D. VALENZANO, ESQ.

Dated: December 30, 2025

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, PETER D. VALENZANO, ESQUIRE, is hereby designated as trial counsel for Plaintiff.

## CERTIFICATION

Pursuant to R. 4:5-1, it is hereby certified that, to the best of my knowledge, there are no other civil actions or arbitration proceedings with respect to this matter, and no other parties need to join currently.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

McOMBER McOMBER & LUBER, P.C.<br>
*Attorneys for Plaintiff, Sanaiya Carlton*

By: /s/ *Peter D. Valenzano*<br>
PETER D. VALENZANO, ESQ.

Dated: December 30, 2025