**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SANAIYA CARLTON,<br><br>           Plaintiff,<br>     v.<br><br>NATIONAL DEBT RELIEF LLC; ANWAR GIBRIEL; TYSHAWN BOYCE; ANTHONY BILARDI; STEPHANIE TORRES; ABC CORPORATIONS 1-5 (fictitious names describing presently unidentified business entities); and JOHN DOES 1-5 (fictitious names describing presently unidentified individuals),<br><br>           Defendants. | Civ. No. 2:26-cv-00944 (WJM)<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

In this action claiming sex discrimination and retaliation, Defendant National Debt Relief LLC ("NDR") moves to compel arbitration and stay this action pending arbitration pursuant to 9 U.S.C. §§ 3-4. ECF No. 8. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons stated below, NDR's motion to compel and stay this action is **granted**.

## I.    BACKGROUND

Plaintiff Saniya Carlton ("Plaintiff") began working at NDR on or about March 1, 2023 as a Sale Account Executive. Compl. ¶ 15, ECF No. 1-2. On or about September 5, 2025, Plaintiff emailed her manager, Defendant Tyshawn Boyce ("Boyce"), and NDR's Human Resources department notifying them of her pregnancy and her estimated March 22, 2026 due date. *Id.* ¶ 17. Three days later, Boyce and Defendant Anthony Bilardi ("Bilardi") placed Plaintiff on a Performance Improvement Plan ("PIP") from September 1 to September 30, 2025, purportedly based on her performance during the prior two months. *Id.* ¶¶ 19-23. On or about September 10, 2025, Plaintiff received DNR's first response regarding her pregnancy, which referenced an incorrect due date. *Id.* ¶¶ 24, 26. Plaintiff's employment was terminated on September 29, 2025 for allegedly using profanity during a client call on August 10, 2025. *Id.* ¶¶ 28-29. Defendants Bilardi and Stephanie Torres denied her request to listen to the audio recording of that client call or for written documentation and also failed to address her discrimination claims. *Id.* ¶¶ 32-37.

1

Plaintiff filed a two-count complaint on December 30, 2025 in state court alleging that in violation of the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1, *et seq.*, Defendants mischaracterized her performance metrics, mishandled her pregnancy notification, and failed to investigate or address her discrimination claims. *Id.* ¶¶ 36-38. In Count One, Plaintiff claims disparate treatment and hostile work environment due to pregnancy and/or gender. *Id.* ¶¶ 42-58. In Count Two, Plaintiff asserts that Defendants engaged in harassment, placed her on PIP, and terminated her in retaliation for requesting maternity leave. *Id.* ¶¶ 59-68. NDR removed this action to federal court on January 30, 2025 pursuant to 28 U.S.C. § 1332(a). ECF No. 1.

NDR now moves to compel arbitration and to stay this action pending arbitration. As a condition of employment, NDR requires all new employees to agree to "Employment Arbitration Program Terms" ("EAP" or "Agreement"). Decl. of Elisabeth ("Dwyer Decl.") ¶ 4. Under the EAP, which is expressly governed by the Federal Arbitration Act ("FAA"), both NDR and the employee agree to submit to "binding arbitration any and all" "employment-related" disputes that "(a) in any way arise from or relate to Employee's application for employment, employment, or termination of employment with NDR and (b) are based upon rights that are protected by federal, state, or local law, and, in the absence of this Program, would otherwise be actionable in court or before a government agency" including disputes about "the termination of that relationship, ... discipline, leaves of absence, accommodations and workplace treatment as well as NDR's policies and practices relating to such matters." EAP, Dwyer Decl. Ex. A, at Preamble, ¶ 2, ECF No. 8-2. Examples of covered claims include allegations of: "(i) discrimination or harassment based on ... sex" or "any other characteristic protected by federal, state or local law; (ii) retaliation," and "(iv) violations of any employment related laws" including the LAD. *Id.*

## II.    DISCUSSION

### A. Motion to Compel Arbitration[1]

The FAA evidences a "'national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'" *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). A court is required to order that the parties proceed with arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. By contrast, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate

---

[1] Because the parties cite to New Jersey state or federal law, the Court will do likewise. *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014).

that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 444 (3d Cir. 1999). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph,* 531 U.S. 79, 91 (2000).

### 1. Applicable Standard

When it is clear from the face of the complaint that the claims at issue are subject to an enforceable arbitration provision, then "a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resol., L.L.C.,* 716 F.3d 764, 776 (3d Cir. 2013) (citation modified). In contrast, if arbitrability is unclear on the face of the complaint or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, a Rule 56 summary judgment standard applies and "the parties should be entitled to discovery on the question of arbitrability before" the motion to compel is decided. *Id.* Here, arbitrability is unclear on the face of the Complaint as it does not refer to the arbitration agreement, attach it as an exhibit, or base any claims on its existence. Thus, the summary judgment standard applies and the Court may consider the EAP in deciding the present motion. *See Young v. Experian Info. Sols., Inc.,* 119 F.4th 314, 318-21 (3d Cir. 2024) (affirming that the summary judgment standard applied to the claims at issue where the complaint made no reference to the arbitration agreement, did not attach the agreement as an exhibit, and did not base the claims on the existence of the agreement); *Wiggins v. Netflix, Inc.,* No. 24-5643, 2026 WL 114377, at *2, n. 7 (D.N.J. Jan. 14, 2026).

When the summary judgment standard applies, "limited" fact discovery into arbitrability *may* often be warranted, but "[i]n the absence of a factual dispute, there is nothing to discover and thus no need to delay a decision on the motion to compel." *Young,* 119 F.4th at 319–20. In this case, pre-arbitration discovery is unnecessary because Plaintiff does not raise any factual dispute about the existence of an agreement to arbitrate. *See id.* at 318-21 (finding that district court erred in mandating limited discovery because no factual disputes existed that necessitated additional discovery to resolve the question of arbitrability).

### 2. Validity and Scope of EAP

To decide whether the parties have agreed to arbitrate any disputes, generally courts apply "ordinary state-law principles that govern the formation of contracts." *In re Remicade,* 938 F.3d at 524 (quoting *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). "'When a party enters into a signed, written contract, that party is presumed to understand and assent to its terms, unless fraudulent conduct is suspected.'" *GAR Disability Advocs., LLC v. Taylor,* 365 F. Supp. 3d 522, 527 (D.N.J. 2019) (citing *Stelluti v. Casapenn Enters., LLC,* 203 N.J. 286 (2010)). Plaintiff does not deny signing the EAP nor does she allege fraud.

3

The EAP also clearly states that both NDR and the employee agree to submit to binding arbitration "employment-related" disputes that: "in any way *arise from or relate to*" Plaintiff's termination of employment with NDR and are "based upon rights that are protected by federal, state, or local law," including allegations of discrimination based on sex or retaliation in violation of the LAD. EAP ¶ 2. As explained by the Third Circuit, "New Jersey '[c]ourts have generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract.'" *In re Remicade*, 938 F.3d at 523 (citation modified). Where, as here, the arbitration clause is broad, the presumption of arbitrability is particularly applicable. *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000). Furthermore, Plaintiff has not disputed that the arbitration agreement encompasses state statutory claims. *See Zeller-Landau v. Sterne Agee CRT, LLC*, No. 17-3962, 2018 WL 334970, at *5 (E.D. Pa. Jan. 9, 2018) ("Courts within the Third Circuit have held that broad arbitration clauses in employment agreements encompass statutory claims."). Thus, Plaintiff's LAD pregnancy-based discrimination and retaliation claims fall within the scope of the EAP.

### 3. EFAA

Nevertheless, Plaintiff insists that her sex discrimination, retaliation, and any related claims are exempt from mandatory arbitration by the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), 9 U.S.C. § 402(a), which precludes employers from "being able to unilaterally compel arbitration in sexual harassment cases." *Cornelius v. CVS Pharmacy, Inc.*, No. 23-01858, 2023 WL 6876925, at *3 (D.N.J. Oct. 18, 2023) (citation modified), *aff'd in part, vacated in part, remanded*, 133 F.4th 240 (3d Cir. 2025), *cert. denied*, 146 S. Ct. 193 (2025). The EFAA states in pertinent part that "at the election of the person alleging conduct constituting a *sexual harassment dispute* or sexual assault dispute, … no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or *the sexual harassment dispute*." (emphasis added). The EFAA's applicability is to be determined under federal law by the court rather than an arbitrator. 9 U.S.C. § 402(b). A "sexual harassment dispute" relates to "conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4).

According to Plaintiff, her pregnancy-based claims are "sexual harassment" disputes that fall under the EFAA because "[s]exual harassment is a form of sex discrimination," *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 601 (1993), and pregnancy is sex-based discrimination, *see Young v. UPS, Inc.*, 575 U.S. 206, 212 (2015). Despite that harassment is a subset of discrimination and both share the fact they are based on sex, sex discrimination and sexual harassment are "conceptually distinct."[2] *Bostock v. Clayton*

---

[2] The New Jersey Supreme Court frequently looks to federal standards in interpreting the LAD. *Lynch v. New Deal Delivery Serv. Inc.*, 974 F. Supp. 441, 453 (D.N.J. 1997); *Grigoletti v. Ortho Pharm. Corp.*, 118 N.J. 89, 97 (1990).

*Cnty., Georgia*, 590 U.S. 644, 669 (2020). "'Sex discrimination is discriminating against someone because of his or her sex, while sexual harassment is unwelcome sexual advances or other verbal or physical contact of a sexual nature.'" *Cornelius*, 2023 WL 6876925, at *3 (citing *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 692 (E.D. Pa. 2020), *aff'd* 2021 WL 6124314 (3d Cir. Dec. 28, 2021)).

Moreover, the elements to satisfy these claims are different. To set forth a *prima facie* case of sex discrimination under the LAD, a plaintiff must demonstrate that: "(1) that she is female; (2) that she applied and was qualified for a job, or other compensation, terms, conditions, or privileges of employment; (3) that, despite her qualifications, she was rejected; and (4) a male employee with similar qualifications received the job, compensation, term, conditions, or privilege." *Ferraro v. Bell Atl. Co.*, 2 F. Supp. 2d 577, 586 (D.N.J. 1998); *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 550 (1990). In contrast, sexual harassment generally divides into either "[q]uid pro quo sexual harassment [that] occurs when an employer attempts to make an employee's submission to sexual demands a condition of his or her employment" or hostile work environment sexual harassment that "occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile." *Lehmann*, 132 N.J. at 601. A hostile work environment sexual harassment claim requires a plaintiff to show that "harassing conduct" would not have occurred but for her sex and was severe or pervasive enough to make a reasonable woman believe that the conditions of employment are altered and her working environment is hostile." *See id.* at 603-05.

Thus, a sex discrimination claim is not coextensive with a sexual harassment claim under the LAD and does not trigger the EFAA's bar on arbitration. *See e.g., Cornelius*, 2023 WL 6876925, at *4 (finding that Title VII and LAD sex-based discrimination claims were not subject to the EFAA because the plaintiff did not include a sexual harassment claim or allege sexual advances or behavior motivated by a sexual desire); *Foster v. Horizon Dental Care at Steamtown, Inc.*, No. 25-01424, 2026 WL 353243, at *9 (M.D. Pa. Feb. 9, 2026) (concluding that pregnancy and sex discrimination, retaliation, and equal pay act violations under federal and state law did not fall within the scope of the EFAA because the plaintiff failed to plausibly allege severe or pervasive sexual harassment giving rise to a hostile work environment claim); *Moulds v. Skillcycle, Inc.*, No. 23-4873, 2024 WL 2206464, at 1, n. 1 (E.D. Pa. March 27, 2024) (granting motion to compel arbitration because claims of pregnancy discrimination under federal law "simply do not constitute claims of sexual harassment or sexual assault, and thus do not implicate EFAA.").

Furthermore, the caselaw cited by Plaintiff are not instructive as they do not involve the interpretation of LAD and/or include factual allegations that support a sexual harassment claim. *See* Pl. Opp. Br. 10-12 (citing cases including *Michael v. Bravo Brio Restaurants LLC*, No. 23-3691, 2024 WL 2923591, at *6 (D.N.J. June 10, 2024) (deciding that EFAA renders otherwise valid arbitration agreement unenforceable because the complaint adequately alleged a hostile work environment claim under Title VII and the

5

LAD); *Ding v. Structure Therapeutics, Inc.*, 765 F. Supp. 3d 897, 902 (N.D. Cal. 2025) (interpreting gender discrimination and sexual harassment as coextensive under New York City Human Rights Law ("NYCHRL") and concluding allegations of hostile work environment plausibly pled a claim for sexual harassment under NY law); *Owens v. PriceWaterHouseCoopers LLC*, 786 F. Supp. 3d 831, 842 (S.D.N.Y. 2025) (disagreeing with *Ding's* conflation of sex discrimination and sexual harassment but finding plaintiff plausibly alleged conduct constituting sexual harassment under the NYCHRL). Here, Plaintiff fails to allege *any* conduct that could support a sexual harassment claim. Her termination based on use of profanity during a client call, the incorrect reference to her due date, and Defendants' failure to address or investigate her discrimination complaint do not plausibly state a claim for "harassing conduct" that was severe or pervasive enough to make a reasonable woman believe that the conditions of employment are altered and her working environment is hostile. Plaintiff's LAD sex and pregnancy-based discrimination claims are not sexual harassment claims that fall within the scope of the EFAA.

### 4. Public Policy

Alternatively, Plaintiff argues that the EAP is unenforceable because three of its provisions – a contractual limitations period, mandatory mediation clause, and restrictions on discovery –violate New Jersey's public policy and are thus unconscionable. *See Delta Funding Corp. v. Harris*, 189 N.J. 28, 39 (2006) ("Generally recognized contract defenses" such as "unconscionability, can justify judicial refusal to enforce an arbitration agreement."); N.J.S.A. § 10:5-12.7 ("A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable.").[3] As discussed below, the Court finds that the limitations period and mandatory mediation provisions are unenforceable and shall be severed from the remaining enforceable EAP.

#### a. Contractual Limitations and Mandatory Mediation

The EAP's "Deadline for Filing a Claim" provision is "a contractual limitations period" requiring that a claim "must be asserted by way of a formal demand for arbitration … filed with the arbitration Administrator identified in this Program within 365 days after the Claim arose. EAP ¶ 5. NDR concedes that the contractual limitations provision is unenforceable as to the LAD claims. *See* Def. Reply Br. at 2. *See e.g., Antonucci v. Curvature Newco, Inc.*, 470 N.J. Super. 553, 567 (App. Div. 2022) (noting that an arbitration provision reducing the time for bringing a discrimination claim to less than two years would be unenforceable because it would waive a substantive or procedural right); *Maria Deangelis, v. CSI International, Inc.*, No. 23-3178, 2026 WL 1209006, at *8 (D.N.J.

---

[3] Notably, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial, forum." *See Martindale v. Sandvik, Inc.*, 173 N.J. 76, 93 (2002) (citation modified)).

6

May 4, 2026) (holding that arbitration clause's shortening of statutory limitations period to six months violated public policy).

Next, the "Mandatory Mediation" clause is likewise unenforceable as it clearly waives a substantive or procedural right to bring a discrimination claim. It provides that after a party files a formal written demand for arbitration in accordance with the EAP, non-binding mediation is mandatory "unless both parties agree in writing to skip the mediation step ... ." EAP ¶ 8. Otherwise, "failure by a party to submit its Claim to mediation or to participate in the mediation shall constitute a waiver of any Claims that the party may have against the other party relating to the subject matter of the written Claim." *Id.*

These unenforceable provisions are, however, severable. First, the EAP contains a severability clause, which provides: "[I]n the event any portion of this Program is deemed unenforceable, the unenforceable provision will be severed from the Program and the remainder of this Program will be enforceable." EAP ¶ 19. *See Delta Funding*, 189 N.J. at 46 (noting that arbitration agreement's "broad severability clause" supports severability of parts that are deemed unconscionable).

Second, striking the contractual limitations and the mandatory mediation provisions would not defeat the *central* purpose of the Agreement which is to arbitrate employment-related disputes, not to impose a shortened limitations period or to mediate disputes. *See Jacob v. Norris, McLaughlin & Marcus,*128 N.J. 10, 33 (1992) ("If striking the illegal portion defeats the primary purpose of the contract, we must deem the entire contract unenforceable. However, if the illegal portion does not defeat the central purpose of the contract, we can sever it and enforce the rest of the contract." (citation modified)). *See e.g., Spinetti v. Serv. Corp. Int'l,* 324 F.3d 212, 214, 219 (3d Cir. 2003) (affirming that unenforceable provisions of arbitration agreement regarding payment of arbitration costs and attorney's fees could be severed without disturbing the primary intent of the parties, which was not to regulate costs or attorney's fees, but "to provide a mechanism to resolve employment-related disputes."); *Maria Deangelis, v. CSI International, Inc.,* 2026 WL 1209006, at *9 (severing the six-month statute of limitations from the valid arbitration agreement because doing so would not destroy the agreement's primary goal of arbitrating disputes).

Third, the Court cannot conclude that either of the illegal terms exhibit a "degree of unfairness" that supports "the inference that the employer was not seeking a *bona fide* mechanism for dispute resolution, but rather sought to impose a scheme that it knew or should have known would provide it with an impermissible advantage." *Parilla v. IAP Worldwide Servs., VI, Inc.,* 368 F.3d 269, 289 (3d Cir. 2004); *see e.g., Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 271 (3d Cir. 2003) (deciding that severance was not appropriate where the agreement contained no severability clause and unconscionability permeated the agreement and "thoroughly taint[ed] its central purpose of requiring the arbitration of employment disputes"). The existence of two unenforceable provisions does not reflect

7

"serious misconduct precluding enforcement of the agreement to arbitrate." *Parilla*, 368 F.3d at 289. Thus, the one-year time limitation and mandatory mediation provisions shall be severed from the enforceable provisions of the EAP.

### b.  Discovery Related Provisions

The EAP limits each side's discovery to no more than 20 interrogatories, one set of no more than 10 requests to produce documents, and no more than 3 depositions (each less than 5 hours) with certain exceptions. EAP ¶ 10. Plaintiff contends that such limitations contravene the LAD's public policy of allowing effective pursuit of discrimination claims and render the entire EAP unenforceable. The Court disagrees. While arbitration discovery provisions "might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citation modified). Indeed, an "important counterweight to the reduced discovery" in arbitration is that "arbitrators are not bound by the rules of evidence." *Id.* (citation modified). Thus, "neither the more restrictive discovery in an AAA proceeding nor the dispute over the scope of discovery should negate a party's agreement to arbitrate his or her discrimination claim." *Quigley v. KPMG Peat Marwick, LLP*, 330 N.J. Super. 252, 262 (App. Div. 2000); *Delta Funding*, 189 N.J. at 49 (rejecting argument that the discovery and other clauses of the arbitration agreement are unconscionable as such claims "are, at their core, a form of generalized attack on arbitration as a method of dispute resolution").

Additionally, the EAP's discovery limitations are not so restrictive that Plaintiff cannot prove discrimination. *Compare Gilmer*, 500 U.S. at 31 (rejecting plaintiff's contention that more limited discovery in arbitration would make it difficult to prove discrimination noting the unlikelihood that age discrimination claims require more extensive discovery than other arbitrable claims such as RICO and antitrust claims), *with Est. of Ruszala ex rel. Mizerak v. Brookdale Living Communities, Inc.*, 415 N.J. Super. 272, 298 (App. Div. 2010) (holding that arbitration agreement provisions that limited compensatory damages, prohibited punitive damages, and "significantly" restricted discovery were unconscionable and that discovery restrictions were "arguably the most palpably egregious because they are clearly intended to thwart plaintiffs' ability to prosecute a case involving resident abuse" and "clearly inconsistent with the protection provided" by state statute).

Finally, arbitration agreements have been enforced where, as here, the arbitrator has the discretion to permit further discovery. *See* EAP ¶ 10 ("Upon the request of a party, the Arbitrator may order additional discovery that is consistent with the Administrator's rules and the expedited, streamlined, efficient nature of arbitration."); *see e.g., Frederick v. L. Off. of Fox Kohler & Assocs. PLLC LLC*, 852 Fed. App'x. 673, 677 (3d Cir. 2021) (concluding that the arbitration provision that "*may* limit each party's right to discovery

and appeal" is enforceable); *Hubbard v. Comcast Corp.*, No. 18-16090, 2020 WL 4188127, at *8 (D.N.J. July 21, 2020) ("[D]iscovery limitations are not substantively unconscionable where the arbitrator has discretion to grant additional discovery and hearing time."). Thus, the discovery limitations in the EAP are enforceable.

B. <u>Motion for Stay</u>

The FAA provides in pertinent part that where there is a written arbitration agreement, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Under this express language, a court has "no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) (holding district court was obligated to grant stay once it decided to order arbitration). That plain statutory text requires a stay of this action against DNR. *See Smith v. Spizzirri*, 601 U.S. 472, 476 (2024).

While a mandatory stay is inapplicable to the claims against the individual Defendants who are not parties to the EAP, the Court does have discretion to control its docket and stay litigation pending the outcome of arbitration. *See Mendez v. Puerto Rican Int'l Companies, Inc.*, 553 F.3d 709, 712, 715 (3d Cir. 2009). When the arbitration and litigation involve overlapping issues, "it would be inadvisable to have these intertwined claims proceed simultaneously in court and in arbitration; such a procedure would be rife with opportunities for mutual interference, inconsistent rulings, and general procedural confusion." *Neal v. Asta Funding, Inc.*, No. 13-3438, 2014 WL 131770, at *5 (D.N.J. Jan. 6, 2014). Plaintiff's LAD claims against NDR and the individual Defendants are based on the same set of facts. Hence the Court will exercise its discretion to stay the claims against the individual Defendants pending resolution of the arbitration against DNR.

## III.    CONCLUSION

In sum, the limitations and mediation provisions are severed and NDR's motion to compel arbitration and for a stay of this action pending arbitration is **granted**.

WILLIAM J. MARTINI, U.S.D.J.

Date: May 21, 2026

9